# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| ANTHONY B. MOORE, | :: | CIVIL ACTION NO. |
| Plaintiff, | :: | 1:08-CV-03669-TCB |
| | :: | |
| v. | :: | |
| | :: | |
| CHEROKEE COUNTY, GEORGIA, | :: | CIVIL RIGHTS |
| Defendant. | :: | 42 U.S.C. § 1983 |
| | :: | |

## ORDER AND OPINION

Now before the Court are Plaintiff Anthony B. Moore's Complaint [1], as amended [28]; Defendant Cherokee County's (the County's) Pre-Answer Motion to Dismiss Plaintiff's Amended Complaint [33], with Brief in Support [33-2]; Mr. Moore's responses [34-35, 38]; the County's replies [36, 37]; Mr. Moore's Motion to Leave to File Amended Complaint [39], as supplemented [41, 43]; and the County's Response in Opposition to Plaintiff's Motion for Leave to Amend [40].

### I.  The First Amended Complaint

Mr. Moore sues the County based on four rulings made by the Hon. Frank C. Mills III, a judge of the Superior Court of Cherokee County, in two civil cases involving disputes between Mr. Moore and his former wife. The disputes concern the pair's rights and responsibilities under their divorce decree and visitation agreement.

(1st Am. Compl. [28] ¶¶ 1-2, 17 *et seq.*) When he filed his first amended complaint on April 3, 2009, Mr. Moore had an appeal pending in each of the two state court civil cases over which Judge Mills presided. (Id. ¶¶ 44-45; 52-53.) On May 2, 2009, the Georgia Court of Appeals rejected Mr. Moore's claim that "the trial court erred in imposing restrictions on his ability to carry a weapon in his vehicle or person . . . when exchanging the children" – noting that the trial court neither prohibited Mr. Moore's ownership of a firearm nor restricted his possession of same "except in the context of a narrowly tailored condition of visitation justified by the evidence" – and remanded the case to the trial court for further proceedings on unrelated matters. (See County's Suppl. Br. in Supp. [36] and Suppl. to Initial Disclosures [37] Ex. A at 19-21.)

The first eight of Mr. Moore's sixteen counts allege various federal and state constitutional violations arising from Judge Mills's "verbal order and written FINAL ORDER OF MODIFICATION restricting [his] ability to carry a conceal[ed] handgun in his car or on his person or in his home whenever he exercise[s] his parenting time . . . ." (1st Am. Compl. ¶¶ 74-77.) Mr. Moore's remaining eight counts allege federal and state constitutional violations arising from Judge Mills's "ORDER DISMISSING MOTION FOR JURY HEARING and ORDER DENYING PETITIONER'S MOTION TO RECONSIDER denying him a jury trial upon jury demand in the Complaint for

AO 72A
(Rev.8/82)

Declaratory Judgment" regarding his obligation to help pay the health insurance costs for his and his former wife's children. (Id. ¶¶ 78-81.) Mr. Moore seeks monetary, declaratory, and injunctive relief. (Id. ¶¶ 82-87.)

## II. The County's Motion to Dismiss the First Amended Complaint

Mr. Moore acknowledges that Judge Mills enjoys "absolute immunity" from a § 1983 lawsuit for actions taken in his judicial capacity. (1st Am. Compl. ¶ 54.) He asserts, however, that Judge Mills is a final policymaker for the County and, therefore, the County is the proper Defendant in this action, stating that Judge Mills "is only being referenced as county policymaker or agent as an elected public official of Cherokee County, Georgia who has final authority over the relevant subject matter as the highest judicial official in the county." (Id.) In its motion to dismiss, the County argues that Mr. Moore's complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(1), because this Court lacks subject matter jurisdiction over his federal claims, and Fed. R. Civ. P. 12(b)(6), because he has failed to set forth a viable state-law claim for relief, inasmuch as Judge Mills, in making the four rulings about which Mr. Moore complains, did not act as a final policymaker for the County. (Br. in Supp. [33-2] at 7-14.) Having withdrawn its argument, presented in its original motion to dismiss [4],

that Mr. Moore's lawsuit is barred by the *Rooker-Feldman* doctrine,[1] the County argues instead that *Younger* abstention applies here. (Id. at 15-16.) Finally, the County reiterates its contention that Mr. Moore has failed to state a claim for relief under Georgia law and argues that he may not obtain punitive damages against a municipal government under either federal or state law. (Id. at 17-21.)

When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a federal court accepts as true "all facts set forth in the plaintiff's complaint" and "limits its consideration to the pleadings and exhibits attached thereto." Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n.11 (11th Cir. 2005) (noting that "federal courts view the allegations of the complaint in the light most favorable to the plaintiff . . . and accept all reasonable inferences therefrom") (citation and internal quotations omitted). "[W]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule

---

[1] The County has withdrawn this argument because recent Eleventh Circuit precedent clarifies that the *Rooker-Feldman* doctrine does not apply when there is a pending appeal in state court from the judgment the plaintiff seeks to attack in federal court. (Br. in Supp. at 14-15.) See, e.g., Nicholson v. Shafe, 558 F.3d 1266, 1279 (11th Cir. 2009) ("[H]old[ing] that state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that . . . invites review and rejection of that judgment.").

4

12(b)(6) grounds is appropriate . . . ." Battle v. Central State Hosp., 898 F.2d 126, 128 (11th Cir. 1990) (citation and internal quotations omitted).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). For purposes of § 1983 liability, "[w]hether a particular individual is a final policymaker is a question of law" for the trial judge, not a jury. Templeton v. Bessemer Water Serv., 154 F. App'x 759, 765 n.4 (11th Cir. 2005) (citing Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997)). Moreover, "whether a particular official has final policymaking authority for § 1983 purposes is a matter of *state law*." Owens v. Fulton County, 877 F.2d 947, 950 (11th Cir. 1989) (emphasis added) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 118 (1988), and Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986)). In that regard, "[a]n official or entity may be a final policymaker with respect to some actions but not others." McMillian v. Johnson, 88 F.3d 1573, 1578 (11th Cir. 1996).

In Bendiburg v. Dempsey, 692 F. Supp. 1354 (N.D. Ga. 1988), the Hon. Judge Forrester of this Court undertook an extensive analysis of the plaintiff's contention

AO 72A
(Rev. 8/82)

"that defendant Cobb County has a custom or policy of depriving parents of their parental rights without due process of law and further that this custom or policy is executed by the defendant county through the juvenile court system acting through defendant Walker . . . as judge pro tempore of the Juvenile Court of Cobb County . . . ." Id. at 1360. Judge Forrester opined that "[t]he grant or denial of defendant Cobb County's motion to dismiss thus turn[ed] on whether under Georgia law, defendant Walker is a county official for the purposes of municipal liability within the meaning of Monell[2] and its progeny." Id.

After examining "various state constitutional and statutory provisions," Judge Forrester concluded that "defendant Walker, in her capacity as judge pro tempore of the Juvenile Court of Cobb County, is an officer of the State of Georgia," based on the "provisions which establish and define both the judicial power and the political subdivisions of the State of Georgia." Id. at 1362. Judge Forrester first noted that the Georgia Constitution provides that "'[t]he power granted to counties . . . shall not be construed to extend to . . . action affecting any court . . . or the personnel thereof.'" Id. (quoting Ga. Const. Art. IX § 2 ¶ 1(c)(7)). He continued as follows:

---

[2] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

6

> The manner in which the counties and the judicial system of the State of Georgia coexist and interrelate likewise leads to the conclusion that a juvenile court judge . . . is a state official. All courts of the State of Georgia . . . are components of a unified state judicial system. Ga. Const. Art. VI § 1 ¶ 2. . . . [The Georgia Constitution] does no more than provide for the orderly arrangement of the several courts of the state; no right of power, control or authority over the courts situated within their boundaries is thereby conferred upon the counties. It is thus clear that the judicial acts of a judge sitting within a particular county are the exercise of the judicial power of the state and are taken by authority of an office created by the state. Put another way, when defendant Walker entered the order [at issue], she did so pursuant to the judicial power of the state as vested within the Juvenile Court of Cobb County and in her capacity as judge pro tempore of the Juvenile Court of Cobb County, an office created by state law. This fact, coupled with the limitations expressly placed upon the counties with regard to "action affecting any court or the personnel thereof," clearly indicates that the several courts of the State of Georgia . . . are organs of the state and that their judicial officers are state officials.

Bendiburg, 692 F. Supp. at 1362-63 (noting that Georgia counties' "responsibilities [for] compensating and approving the amount of [judicial] compensation" confers in them no power, express or implied, over Georgia courts sitting within their territories).

Mr. Moore cites Familias Unidas v. Briscoe, 619 F.2d 391 (5th Cir. 1980), and Crane v. Texas, 759 F.2d 412 (5th Cir. 1985), for the proposition that, as stated in Familias, 619 F.2d at 404, "many actions of a county judge . . . may justifiably be considered to constitute or represent county 'policy' under Monell." (1st Am. Compl. ¶¶ 59-60.) The Familias court, however, distinguished a Texas county judge's

7

"judicial duties" from the "numerous executive, legislative and administrative chores in the day-to-day governance of the county" that the Texas Constitution and statutes assign to a county judge. In the latter areas, in which the judge, "alone, is the final authority or ultimate repository of county power, [the judge's] official conduct and decisions must necessarily be considered those of one whose edicts or acts may fairly be said to represent official policy for which the county may be held responsible under section 1983." 619 F.2d at 404 (internal quotations omitted). The Familias court ultimately concluded that the defendant Texas county was "not susceptible to liability under section 1983 for" the county judge's "issuance," in his judicial capacity, of "disclosure demands," which, although in compliance with state law, violated the First Amendment to the United States Constitution. Id.; see id. at 402.

Mr. Moore has cited numerous cases that he claims stand for the proposition that the County may be held liable for the rulings of Judge Mills. (See 1st Am. Compl. [28] ¶¶ 55-65; Notice to Suppl. Auth. [34] at 5-7; Suppl. Br. in Supp. of Pl.'s Am. Resp. to Def.'s Mot. to Dismiss [38] at 1-7.) However, none of these cases supports Mr. Moore's proposition that Judge Mills is a final policymaker for the County. In Freeman v. Barnes, 282 Ga. App. 895, 898-99, 640 S.E.2d 611, 614-15 (2006), for example, which involved a Georgia Workers' Compensation Act dispute and which

Mr. Moore cites in ¶ 58 of his first amended complaint, the Georgia Court of Appeals, noting that "[a] superior court judge's jurisdiction 'is coextensive with the limits of this [S]tate' . . . . OCGA § 15-6-12 (a)[,]" held that "the trial court did not err in concluding that Judge Barnes [a former judge of the Superior Court of Fulton County] was not a Fulton County employee as well as a state employee." In Owens, which Mr. Moore cites in ¶ 59 of his first amended complaint, the Eleventh Circuit distinguished Georgia law from the law of Texas and Louisiana in concluding that when a district attorney in Georgia exercises his "authority over prosecutorial decisions, which is vested by state law pursuant to state authority," he acts as a state official and not as a final policymaker for the county in which he prosecutes a case. Owens, 877 F.2d at 949-52 (citing Familias et al. for proposition that "an official may simultaneously exercise county authority over some matters and state authority over others," and distinguishing in this regard district court's conclusion in Crane that Texas district attorney was county policymaker). See also McMillian, 88 F.3d at 1580-83 (cited by Mr. Moore in ¶ 65 of his first amended complaint, and holding that Alabama sheriff "is not a final policymaker for [his county] in the area of law enforcement," although he may be one in the area of jail maintenance, because "under Alabama law, law enforcement is an exercise of state power, whereas jail maintenance

is an exercise of county power"; noting that, under Alabama law, "a sheriff is a state officer according to the state constitution," that "[t]he Alabama Supreme Court has held that sheriffs are employees of the state, not their counties, and thus that counties may not be held vicariously liable for sheriffs' actions," and that "sheriffs enjoy a special status as state officers under Alabama law"; and citing Owens for support), aff'd, McMillian v. Monroe County, 520 U.S. 781 (1997).

Other cases cited by Mr. Moore are equally unavailing. (See, e.g., 1st Am. Compl. ¶ 56 (citing Botello v. Gammick, 413 F.3d 971 (9th Cir. 2005) (applying Nevada law to conclude that Nevada district attorney is county policymaker, id. at 978-79); Hughes v. Tarrant County, 948 F.2d 918 (5th Cir. 1991) (affirming denial of (1) county commissioners' claims of legislative immunity and (2) prosecutor's claim of absolute immunity regarding advice to commissioners, id. at 921-23)); 1st Am. Compl. ¶ 57 (citing McMillian, 520 U.S. 781 (concluding that Alabama sheriff is state, not county, policymaker, id. at 783), and Grech v. Clayton County, 335 F.3d 1326 (11th Cir. 2003) (en banc) (concluding that Georgia sheriff acting "in his law enforcement function" is not county policymaker), for proposition that, to distinguish state from county policymakers, "courts must focus on [who exercises] control over the official," and not on state-law labels, id. at 1327, 1330); 1st Am. Compl. ¶ 60

(citing Gobel v. Maricopa County, 867 F.2d 1201 (9th Cir. 1989) (relying upon Familias and Crane to support conclusion that county attorney in Arizona was acting as policymaker for county by "hold[ing] a public roundup of bad check offenders," id. at 1206-09); Blackburn v. Snow, 771 F.2d 556 (1st Cir. 1985) (concluding that Massachusetts sheriff was policymaker for county with respect to jail's strip search policy, id. at 571)); 1st Am. Compl. ¶ 61 (citing Dixon v. Burke County, 303 F.3d 1271 (11th Cir. 2002) (affirming district court's conclusion that – assuming grand jury assigned to select candidate to fill vacancy on board of education was final county policymaker – county was not liable on facts presented, id. at 1272-73, 1276); Ryan v. County of DuPage, 45 F.3d 1090 (7th Cir. 1995) (noting that "county was properly dismissed [because] Illinois sheriffs are independently elected officials not subject to the control of the county" and, thus, not county policymakers, id. at 1092)); 1st Am. Compl. ¶ 62 (citing Soderbeck v. Burnett County, 752 F.2d 285 (7th Cir. 1985) (concluding that Law Enforcement Committee through which Board of Supervisors, county's governing body, operates "unquestionably is a policy-making body whose acts are the county's acts for purposes of section 1983," id. at 292-93); Wilson v. Taylor, 733 F.2d 1539 (11th Cir. 1984) (concluding that district court properly left to jury question of whether police chief exercised final policymaking authority for city

in discharging police officer, id. at 1546-47)[3]); 1st Am. Compl. ¶ 64 (citing Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000) (remanding to district court to determine whether county or sheriff's department was proper defendant in § 1983 action alleging Fourth Amendment violations by sheriff and his deputies, id. at 1013-14)); Notice to Suppl. Authority [34] at 6 (citing Scala, 116 F.3d 1396, in which Eleventh Circuit held that "City Manager and his subordinate, the Public Safety Director, are [not] final policymakers with respect to employment termination decisions at the City's fire department . . . because their decisions are subject to meaningful administrative review by the City Civil Service Board." Id. at 1402); Suppl. Br. [38] at 6 (citing Boston v. Lafayette County, 743 F. Supp. 462 (N.D. Miss. 1990) (distinguishing Familias and Crane in § 1983 case arising from rulings of Special Master appointed by Chancery Judge; concluding that, under Fifth Circuit's "judicial function doctrine" – which "controls whenever a judge performs his judicial duties and his discretion is sufficiently narrowed by state statute, whether he properly applies a facially unconstitutional statute or improperly applies a constitutionally valid statute" – Special Master could not "be considered a county policymaker for purposes

---

[3] But see Scala, 116 F.3d at 1402 n.4 (noting that, "[i]n light of subsequent Supreme Court decisions, little, if anything, of Wilson's final policymaker analysis survives").

12

of § 1983" in "perform[ing] a judicial duty pursuant to state statutory authority"; and noting that Fifth Circuit "has uniformly rejected attempts to hold local governments liable for constitutional deprivations caused by local judges' interpretation and implementation of state law." Id. at 470-71))).

Mr. Moore has cited many more cases (at least forty-five in all) to support his contention that Judge Mills acted as a final policymaker for the County when he issued the rulings to which Mr. Moore objects here. However, as the foregoing makes clear, the cases Mr. Moore has cited are either inapposite to the present circumstances, because they involve actions or decisions by officials performing non-judicial functions under state law regimes different from Georgia's, or, when an analogy to the present circumstances is appropriate, actually support the County's position on the final policymaker issue, not Mr. Moore's. Accordingly, the County's motion to dismiss Mr. Moore's first amended complaint will be granted because the County cannot be held liable in a § 1983 action for Judge Mills's rulings and decisions.

### III. Mr. Moore's Motion for Leave to File a Second Amended Complaint

Mr. Moore has filed a motion for leave to file a second amended complaint, as well as two supplements to that motion. In the motion, Mr. Moore seeks to add a claim under 42 U.S.C. § 1981 "regarding '*non-employment discrimination.*'" (Mot. [39] ¶ 6.)

13

Mr. Moore outlines the elements of such a claim as follows: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination involved one or more of the activities enumerated in the statute.[4] Mr. Moore contends that the County violated the "equal benefit clause" of § 1981 because similarly situated whites with a valid Georgia Firearms License have not been denied a jury trial upon written demand and have not had restrictions placed upon their possession of a firearm. (Id. ¶¶ 8-12.) Mr. Moore contends that discrimination can be inferred from the following: (1) the "procedural and substantive departures from the norms generally followed by the decision-maker"; (2) the restrictions on his own right to carry a firearm, which are "not readily explainable" other than by an intent to discriminate "by the Caucasian policymaker"; and (3) the policymaker's rulings, which "present a pattern or series of acts that lead to a prima facie case of intentional discrimination." (Id. ¶¶ 11-14.)

---

[4] Title 42 U.S.C. § 1981(a)'s "Statement of equal rights" provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

14

Mr. Moore further contends that the County is not protected by sovereign immunity from his § 1981 claim. (Id. ¶¶ 17-18.)

In his first supplement to his motion for leave to file a second amended complaint, Mr. Moore asserts that Judge Mills interfered with his right of access to the courts by his "omission or refusal to provide a Certificate of Immediate Review even though Plaintiff did seek [a] certificate within the ten (10) day time frame required by Georgia law," which prevented him from pursuing an interlocutory appeal of the denial of his jury demand. (1st Suppl. [41] ¶¶ 6 *et seq.*) Mr. Moore purports to add a claim under 42 U.S.C. § 1982[5] (id. ¶¶ 19-24), and also claims "common law fraud" under Georgia law (id. ¶¶ 25-26). In his second supplement, Mr. Moore raises an additional state law claim based on his former wife's alleged simultaneous prosecution of two actions against him regarding the same matter. (2d Suppl. [43] ¶¶ 12 *et seq.*) Mr. Moore summarizes his proposed second amended complaint as "collectively . . . a tort 42 U.S.C. § 1981 action, 42 U.S.C. § 1982 action, 42 U.S.C. § 1983 action regarding the violations of [his] civil rights under the First, Second, Seventh, and

---

[5] Title 42 § 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Fourteenth Amendment[s]," and also "a tort action for violations of [his] civil rights under the Georgia Constitution." (Id. ¶¶ 20-21.)

The County responds that Mr. Moore's motion to amend his complaint should be denied as futile and as a waste of this Court's and the County's time and resources. (Resp. [40] at 3-6.) The County also notes that Mr. Moore's § 1981 claims fail for the same reason that his other claims fail – because Judge Mills is not a policymaker for the County, and his actions and intentions cannot be imputed to the County. Therefore, the County argues, Mr. Moore cannot establish one of the three elements of a prima facie § 1981 discrimination case against the County, namely, the County's *intent* to discriminate. (Id. at 6-8.)

After a party has once amended a pleading,[6] he may do so again "only with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a). "[A] motion to amend may be denied on numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1218 (11th Cir. 2004) (internal quotations omitted). For the reasons discussed

---

[6] As noted above, Mr. Moore previously amended his complaint on April 3, 2009. (See Pl.'s Am. Compl. [28].)

16

above with respect to Mr. Moore's § 1983 claims against the County, his § 1981 claims also fail, and it would be futile to allow him to amend his complaint to add those claims. See Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir. 2005) (stating that "[m]unicipal liability under both § 1981 and § 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom") (footnote and internal quotations omitted); Hailey v. City of Camden, No. 01-3967, 2009 U.S. Dist. LEXIS 39114, at *29 (D.N.J. Apr. 29, 2009) (quoting Monell, 436 U.S. at 694, for proposition that "municipality is liable under Sections 1981 and 1983 only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury'"); Chin v. N.Y. City Hous. Auth., 575 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) (stating that "municipality can be liable for violating Section 1981 only if the injury at issue resulted from the execution of a racially discriminatory 'policy or custom'") (footnote omitted). Likewise, Mr. Moore's § 1982 claims fail. See, e.g., Long v. Aronov Realty Mgmt., No. 2:07-CV-881, 2009 U.S. Dist. LEXIS 8471, at *12-13 (N.D. Ala. Feb. 4, 2009) (quoting CBOCS W., Inc. v. Humphries, _ U.S. _, 128 S. Ct. 1951, 1956 (2008), for proposition that "Supreme

17

Court precedents 'have long construed §§ 1981 and 1982 similarly' and ... the only difference in the statutes' language is the set of rights protected").

Mr. Moore's remaining claims – alleging interference with his right of access to the courts, common law fraud, and the filing of multiple lawsuits against him – are either frivolous, based exclusively on state law, or both. Therefore, because all of Mr. Moore's federal claims fail, this Court declines to exercise supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367. Allowing Mr. Moore to amend his complaint to add these remaining claims would be just as futile as allowing him to add his §§ 1981 and 1982 claims.

## IV. Conclusion

For the foregoing reasons, Cherokee County's Pre-Answer Motion to Dismiss Plaintiff's Amended Complaint [33] is **GRANTED**, and Mr. Moore's Motion to Leave to File Amended Complaint [39] is **DENIED**. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED**, this 10th day of August, 2009.

_____
TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)